UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------X
RUBI SIBLO-LANDSMAN,

          Plaintiff,

-vs-

CAMP RAMAPO FOR CHILDREN, INC.,

          Defendant.
------------------------------------------------X

COMPLAINT

JURY TRIAL DEMANDED

ECF Case

**07 CIV. 0800**

**ROBINSON**

## PARTIES

1. Plaintiff is a woman residing in Saugerties, New York.

2. Defendant is a corporation organized pursuant to the laws of the State of New York.

## JURISDICTION AND VENUE

3. As plaintiff brings this action alleging sexual harassment in violation of Title VII of the Civil Rights Act of 1964, this Honorable Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(3) & (4) and 42 U.S.C. § 2000e-5 et seq.

4. As the State law cause of action arises from the same nucleus of operative facts as the Federal claim, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1367.

5. As the events giving rise to this action arose in County of Dutchess, this case is venued in Southern District of New York.

6. On April 19, 2006, reflecting her intent to activate the investigative and conciliatory process, and preserving her right to proceed under Title VII of the

Civil Rights Act of 1964, plaintiff filed a comprehensive intake questionnaire with the Ulster County Human Relations Commission outlining the sexual harassment to which she was subjected while employed by defendant.

7. In the event this Court deems the formal State Division of Human Rights complaint, dated June 23, 2006, the operative filing, since the Ulster County Human Relations Commission delayed the administrative process by two weeks by mistakenly sending plaintiff draft revisions of the SDHR complaint to the wrong address, her administrative claim is timely and this Court has jurisdiction to hear and resolve this action.

**FACTUAL AVERMENTS**

8. Plaintiff was born on July 27, 1988.

9. Defendant operates a camp that services special-needs children. On June 26, 2005, plaintiff commenced working for defendant as an office worker and camp counselor.

10. Although plaintiff was 16 years old when she began working for the camp, defendant did not ensure that she worked in a safe environment. During her training period, defendant did not mention sexual harassment prevention or circulate a sexual harassment policy. Moreover, defendant regularly made condoms and lubricants available to camp counselors, many of whom were older than plaintiff.

11. Plaintiff was one of the younger counselors at the camp and was preyed upon by older male counselors.

12. During the week of July 5-11, 2005, a counselor, Carlos Singer, sexually assaulted plaintiff in the Silverweed building by placing his hands down her pants, fondling her vagina and pinning her on the floor against her will. Plaintiff pushed Singer away from her and fled the building.

13. On or about July 14, 2005, two other counselors, John Elmore and Jerry Orozco, sexually assaulted plaintiff in Thomas Hall by rubbing her private parts against her will. One of the counselors, Elmore, ejaculated on plaintiff.

14. On or about August 4, 2005, plaintiff was playing "truth or dare" with two counselors, Elmore and Akeem Cordes. Elmore displayed a condom and dared plaintiff to put her mouth on Cordes' penis. Frightened, plaintiff briefly complied with the dare. Afterwards, Elmore and Cordes would not allow plaintiff to leave the room.

15. Moments later, Cordes raped plaintiff, forcing her to have sexual intercourse against her will in Elmore's presence.

16. Approximately six days later, when plaintiff went to the computer lab at Keller Hall to check her e-mail, Jerry Orozco positioned himself on top of her, grabbed her breasts and tried to remove her clothing. A few minutes later, Singer forced plaintiff to have sexual intercourse against will.

17. On August 16, 2005, plaintiff reported the sexual assaults to the Camp's Associate Directors Jen Pubenz and Michael Kunin. She also reported the assaults to the Executive Director, Bernie Kosberg, who arranged for plaintiff to be sent home. The counselors who assaulted plaintiff were not asked to leave at

this time.

18. The next day, Kosberg and other camp officials met with plaintiff's mother, Amy Landsman. Kosberg was on the defensive throughout the meeting, making it clear to Landsman that camp officials were neither properly trained nor prepared to adequately investigate the sexual harassment and assault charges.

19. Kosberg told Landsman that the camp was not safe with plaintiff present. He further told Landsman that camp officials are neither detectives nor investigators and that "I feel very uncomfortable with this, I really do. This is not my field. This is not what I want to be able to do. I don't want to get into this stuff."

20. At the meeting, Kosberg said he received conflicting reports about what happened to plaintiff and that "our hands are tied . . . there's only so much we can do."

21. Kosberg also said that plaintiff needs to tell Landsman about her questionable activities and relationships at the camp. He added, "I feel very disturbed at what's been going on. I've done everything that I can do. Our hands are tied to some degree in terms of the information we have been able to uncover. Games that were going on which Rubi was part and parcel of for quite awhile before the incident occurred. Give me something to work with."

22. Repeatedly focusing on plaintiff's nighttime activities at the camp, Kosberg said that "hook-up stuff was going on" and that plaintiff was known throughout the camp as the "girl to hook up with." He also said that sex games in which plaintiff took part led to the sexual assaults. While Kosberg told Landsman that he was not accusing plaintiff of any wrongdoing, he emphasized that "there was a lot of

4

sexual activity going on, in which she was very much involved."

23. While Kosberg told Landsman that "we take people in here, we treat them as adults, they have an adult job," he overlooked the fact that plaintiff was 16 years old when she began working at the camp and that she had not reached the legal age of consent in New York.

24. Landsman asked Kosberg if he was required to report the allegations. He replied that this was Landsman's responsibility and that plaintiff "was on her own time, in this environment, having no job responsibilities. What we do is report facts that have to do with campers and the counselors in terms of behavior that's related to their work."

25. Unprepared to investigate the allegations, defendant failed to properly investigate plaintiff's sexual harassment and assault charges and failed to take appropriate remedial action.

26. As a result of defendant's failure to maintain a safe working environment, as well as its tacit endorsement of the sexual harassment, plaintiff has suffered severe physical and emotional distress.

## CAUSES OF ACTION

27. Plaintiff incorporates the allegations in ¶¶ 1-26 as if fully re-stated herein.

28. By condoning and failing to remedy the sexually hostile environment to which plaintiff was subjected, defendant discriminated against her in violation of Title VII of the Civil Rights Act of 1964 and New York Executive Law § 296-97.

**PRAYER FOR RELIEF**

Plaintiff respectfully requests that this Honorable Court:

a. accept jurisdiction over this matter;

b. empanel a jury to fairly hear and decide this case;

c. award to plaintiff compensatory damages to redress her significant physical and emotional injuries occasioned by defendant's failure to maintain a safe working environment;

d. award to plaintiff punitive damages in light of defendant's willful failure to comply with the Civil Rights Act of 1964;

e. award to plaintiff reasonable attorneys' fees and costs expended in litigating this action; and

f. award to plaintiff such other relief deemed just and proper.

Dated:    February 1, 2007

Respectfully submitted,

STEPHEN BERGSTEIN
HELEN G. ULLRICH

BERGSTEIN & ULLRICH, LLP
15 Railroad Avenue
Chester, New York 10918
(845) 469-1277
Counsel for plaintiff